# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| PATTY YOULL,<br><br>    Plaintiff,<br><br>vs.<br><br>ESTHERVILLE, IA ASSISTED LIVING FACILITY, LLC, d/b/a WINDSOR MANOR; ESTHERVILLE STAFFING, LLC; FOSTER DEVELOPMENT, INC, d/b/a FOSTER SENIOR LIVING; SUSAN FOSTER; LYNNE POPP,<br><br>    Defendants. | No. 18-cv-3051-CJW<br><br>**ORDER** |

This matter is before the Court on defendants' unresisted[1] Motion to Compel Arbitration Pursuant to the Federal Arbitration Act. (Doc. 2). In their motion, defendants specifically "request that this Court enter an order staying these proceedings and compelling Plaintiff to arbitrat[e] her Iowa and federal employment claims against the Defendants." (*Id.*, at 8). For the following reasons, defendants' motion is **granted**.

## I.    BACKGROUND

Plaintiff filed her amended state court petition on August 8, 2018, alleging violations of the Iowa Civil Rights Act and the federal Age Discrimination in Employment Act. (Doc. 5). On August 20, 2018, defendants timely removed the case to this Court.

---

[1] Although the motion does not clearly indicate whether the motion is resisted, no resistance was filed, and plaintiff's counsel informed the Court both via telephone and email that the motion is unresisted.

(Doc. 1). In her state court petition, plaintiff alleges that plaintiff's employer and the employer's agents (collectively, "defendants") discriminated against plaintiff based on her age and that plaintiff was terminated as a result of such discrimination. (Doc. 5 at 2-5).

As part of her employment application, plaintiff signed a "Terms and Conditions of Employment" document, which contains an arbitration provision providing as follows:

> I do agree that if employment dispute arises [sic] while you [sic] may be employed at *Windsor Manor Assisted Living*[,] you [sic] agree to submit any such dispute arising out of your [sic] employment or the termination of your [sic] employment (including, but not limited to, claims of unlawful termination based on race, gender, age[,] national origin, disability, breach of contract[,] or any other bias prohibited by law) exclusively to binding arbitration under the Federal Arbitration Act, 9 U.S.C., Section 1. . . . This arbitration shall be the exclusive means of resolving any dispute arising out of your employment or termination from employment by *Windsor Manor Assisted Living* or you [sic], and no other action can be brought by employees in any court or any forum.

(Doc. 2-2, at 1 (emphasis in original)). The Court understands that plaintiff is willing to submit her claims to arbitration, on the condition that the instant case is stayed. (*See* Doc. 2, at 8).

## II. APPLICABLE LAW

The Federal Arbitration Act ("the Act") provides that "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2017). Thus, for the Act to govern an arbitration agreement in a contract, the contract must affect interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74, 281 (1995). Further, if a contract is otherwise revocable, the arbitration provision may not mandate arbitration within the

2

meaning of the Act. *See generally id.* (explaining that states may invalidate contracts under general contract law principles and "may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract'" (quoting 9 U.S.C. § 2)).

When a party to a contract involving an arbitration agreement falling within the scope of the Act petitions a court for enforcement of the arbitration agreement, the court must order "the parties to proceed to arbitration in accordance with the terms of the [arbitration] agreement." 9 U.S.C. § 4. The court need only order as such if the court is satisfied that the making of the arbitration agreement or compliance with the arbitration agreement are not at issue. *Id.*

This is consistent with the Eighth Circuit Court of Appeals' dictate that when reviewing a claim that an arbitration agreement falls within the scope of the Federal Arbitration Act, courts should consider: 1) "whether there is a valid agreement to arbitrate," and 2) "whether the specific dispute at issue falls within the substantive scope of that agreement." *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001). When reviewing such claims, courts should bear in mind that the Act's "provisions manifest a liberal federal policy favoring arbitration agreements." *Id.* (internal quotation marks omitted) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). Finally, when ordering the parties to arbitrate their claims under the Act, if one or more of the parties moves the Court to stay pending judicial proceedings, the Court must stay the trial until the parties have proceeded through the arbitration process. 9 U.S.C. § 3.

### *III.  DISCUSSION*

As plaintiff does not resist the instant motion, the issues before the Court are relatively straightforward. Defendants have brought forth evidence showing that the contract at issue does affect interstate commerce. (*See* Doc. 2-3). Neither party argues that the contract is otherwise revocable, and, for purposes of the instant motion, the Court will assume that it is not. The Court therefore concludes that the Act does govern the arbitration clause at issue. As set forth above, the Court must next consider whether the parties entered into a valid agreement to arbitrate, and whether the dispute at issue falls within the substantive scope of the agreement.

### *A.  Valid Agreement to Arbitrate*

Turning first to the issue of whether there is a valid agreement to arbitrate, the Court finds that there is. Defendants assert that the contract at issue is the agreement between plaintiff and Windsor Manor Assisted Living ("Windsor Manor") that Windsor Manor would hire plaintiff for a specific job. (Doc. 2). The Court, however, finds that the relevant inquiry is slightly different.

It is the acceptance of the arbitration clause in the "Terms and Conditions of Employment" document itself that the Court must consider. The Court will, therefore, turn to the "Terms and Conditions of Employment" document to determine whether the parties entered into a valid contract by way thereof and, further, whether the arbitration agreement contained therein was validly entered into. Under Iowa law,[2] a contract has been formed if there is an offer, acceptance of the offer, and consideration. *Taggart v. Drake Univ.*, 549 N.W.2d 796, 800 (Iowa 1996) (citation omitted).

The "Terms and Conditions of Employment" document amounts to an offer by

---

[2] Defendants assert that Iowa law governs the issue of contract formation, and the Court will assume, without finding, that this assertion is accurate. (*See* Doc. 2 at 6).

4

Windsor Manor to consider plaintiff's application for employment. This is evidenced by the following paragraph:

> It is my[3] understanding that *Windsor Manor Assisted Living* will make a thorough investigation of my entire work history and may verify all information and papers given in my application for employment. I authorize such investigation, believing that all statements I have made are true to the best of my knowledge. I realize that falsification of information given may prevent my being hired; or[,] if hired[,] may subject me to immediate dismissal. I authorize investigation of all statements contained herein and references listed above to give [*Windsor Manor Assisted Living*] any and all information concerning my previous employment and any pertinent information [my previous employers] may have, and release all parties from all liability for any damage that may result from furnishing same to [*Windsor Manor Assisted Living*].

(Doc. 2-2 (footnote added) (emphasis in original)). Additionally, the "Terms and Conditions of Employment" document does not refer to any terms of employment specifically and, instead, refers only to specifics of the application process. This is yet another indicator that the document is intended as an offer to consider plaintiff's application for employment.

Turning next to acceptance, the Court finds that plaintiff accepted the offer to consider her application for employment by signing the "Terms and Conditions of Employment" document. (*See* Doc. 2-2). Plaintiff does not deny signing the "Terms and Conditions of Employment" document, nor does she claim she did not agree to the document's terms. The Court will, therefore, assume that plaintiff's acceptance was valid.

Finally, the Court finds that the contract was accompanied by consideration. Windsor Manor contemplated plaintiff's application for employment specifically because plaintiff agreed to the "Terms and Conditions of Employment," which amounts to

---

[3] The first-person pronouns contained in this quotation refer to plaintiff.

5

consideration, given the type of contract at issue. *Margeson v. Artis*, 776 N.W.2d 652, 655-66 (Iowa 2009) ("[C]onsideration exists if the promisee, in exchange for a promise by the promisor, does or promises to do something the promisee has no legal obligation to do."). Further, plaintiff's acceptance of the "Terms and Conditions of Employment" was itself consideration because plaintiff gave up certain rights under the "Terms and Conditions of Employment," including the right to pursue any claim regarding her employment or termination in court, as opposed to through arbitration. *Id.* ("[C]onsideration exists if the promisee refrains, or promises to refrain, from doing something the promisee has a legal right to do."). (*See also* Doc. 2-2). As such, the Court concludes that the parties entered into a valid contract to consider plaintiff's employment. Further, the agreement to arbitrate itself appears to have been validly entered into based on the same contract formation analysis discussed herein. No party argues that the contract is otherwise revocable, and the Court will therefore assume that it is not. Accordingly, the Court concludes that the first prong in the two-part inquiry has been satisfied.

### B. *Whether the Disputes at Issue Fall Into the Substantive Scope of the Arbitration Agreement*

The Court must now consider whether the disputes at issue in this case fall within the substantive scope of the arbitration agreement. The arbitration agreement provides that plaintiff agreed to submit any "dispute arising out of . . . the termination of [her] employment (including . . . claims of unlawful termination based on . . . age . . .) exclusively to binding arbitration under the Federal Arbitration Act, 9 U.S.C., Section 1." (Doc. 2-2). Similarly, the arbitration provision provides that plaintiff agreed to submit to arbitration "any disputes arising during [her] employment involving claims of unlawful discrimination." (*Id.*).

Plaintiff brought two separate claims, one alleging age discrimination and

retaliation under the Iowa Civil Rights Act, and one alleging age discrimination under the federal Age Discrimination in Employment Act. (Doc. 5, at 4-5). Although not clear from the Amended Petition and Jury Demand, it would appear that the retaliatory conduct alleged under the state law claim was plaintiff's termination. (*See generally* Doc. 5). The Court is able to discern no other retaliatory conduct from the four corners of the Amended Petition and Jury Demand. Likewise, plaintiff's federal claim is based on alleged age discrimination that ultimately resulted in plaintiff's termination. (*Id.*, at 4-5). As such, each of plaintiff's claims arises out of plaintiff's allegedly unlawful termination based on plaintiff's age. The arbitration agreement specifically provides that claims of unlawful termination based on age are to be submitted to arbitration. The Court therefore concludes that plaintiff's claims fall squarely within the arbitration provision.

As explained, *supra*, the Court is satisfied that the arbitration agreement was validly entered into. *See* 9 U.S.C. § 4 (explaining that a court need not order compliance with the arbitration agreement if the court is not satisfied with the propriety of the making of the arbitration agreement or with compliance with the arbitration agreement). Further, as the parties are in relative agreement as to resolving plaintiff's claims through arbitration, the Court does not view compliance with arbitration as an issue. *See id.* As a result, the Court finds it proper to compel the parties to submit their claims to binding arbitration. Because the arbitration provision does not set forth any specifics with respect to the arbitral proceedings, the Court will refrain from imposing any additional requirements or specifications.

## C. *Stay*

Finally, because defendants have requested that the Court stay proceedings in the instant case pending resolution of arbitration,[4] the Court is required to stay the trial in this matter. 9 U.S.C. § 3. The Court will go one step further, however, and will stay all proceedings and deadlines in the instant case pending the resolution of arbitration. The Clerk of Court is directed to terminate all outstanding motions and close this case administratively, subject to being reopened following final resolution of the arbitral proceedings. The parties are directed to notify the Court if and when the case needs to be reopened.

## IV. CONCLUSION

For the aforementioned reasons, defendants' Motion to Compel Arbitration Pursuant to the Federal Arbitration Act is **granted**. Further, the Clerk of Court is directed to terminate all outstanding motions and close this case administratively, consistent with the instructions set forth above.

**IT IS SO ORDERED** this 17th day of September, 2018.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[4] The Court understands that although the motion to stay was formally made by defendants, defendants did so at plaintiff's request.